UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DE'ADRIAN BOYKINS, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | No. 1:23-cv-00568-JMS-TAB |
| v. ) | |
| ) | |
| L. GRAY and C. TYLER, ) | |
| ) | |
| *Defendants.* ) | |

**ORDER**

Plaintiff De'Adrian Boykins is an inmate currently incarcerated at Pendleton Correctional Facility ("PCF"). He filed this lawsuit against Defendants L. Gray and C. Tyler, both Correctional Officers at PCF, alleging violations of his Eighth Amendment rights.[1] Four motions are ripe for the Court's consideration: (1) Defendants' Motion for Summary Judgment, [Filing No. 37]; (2) Mr. Boykins' Motion for Surreply, [Filing No. 47]; (3) Defendants' Motion to Strike Mr. Boykin's Motion for Surreply, [Filing No. 48]; and (4) Mr. Boykins' Motion Requesting Denial of Motion to Strike, [Filing No. 49].

**I.**
**MOTION FOR SURREPLY, MOTION TO STRIKE, AND MOTION REQUESTING DENIAL OF MOTION TO STRIKE**

The Court first addresses Mr. Boykins' Motion for Surreply, [Filing No. 47], Defendants' Motion to Strike Mr. Boykins' Motion for Surreply, [Filing No. 48], and Mr. Boykins' Motion Requesting Denial of Motion to Strike, [Filing No. 49], because their adjudication impacts the arguments considered in connection with the pending Motion for Summary Judgment.

---

[1] These are the claims which the Court found should proceed after the Court screened Mr. Boykins' Complaint pursuant to 28 U.S.C. § 1915A(a), (c). [Filing No. 1; Filing No. 7.]

1

### A.    Background

In support of their Motion for Summary Judgment, Defendants argue that they are entitled to qualified immunity on all of Mr. Boykins' claims. [Filing No. 40 at 11-12.] In his response in opposition, Mr. Boykins does not address Defendants' qualified immunity argument. [*See* Filing No. 43.] In reply, Defendants reiterate their arguments in support of summary judgment. [Filing No. 45.] Thereafter, Mr. Boykins filed his Motion for Surreply, addressing Defendants' qualified immunity argument and arguing that they are not entitled to qualified immunity. [Filing No. 47.]

Defendants subsequently filed their Motion to Strike, arguing that Mr. Boykins' Motion for Surreply should be denied because there are no grounds supporting a surreply. [Filing No. 48.] Defendants assert that they did not cite to new evidence or object to the admissibility of evidence in their reply. [Filing No. 48.] In response, Mr. Boykins filed his Motion Requesting Denial of Defendants' Motion to Strike Surreply, arguing that Defendants' reply included "'new evidence' of qualified immunity," therefore permitting his surreply. [Filing No. 49.] Defendants reiterate in reply that Mr. Boykins' surreply should be stricken as they "never cited any new evidence in their reply [in support of their summary judgment motion] or objected to the admissibility of any evidence cited by [Mr. Boykins'] in his response." [Filing No. 50 at 1.] They highlight that they "initially raised and addressed their qualified immunity argument in their [summary judgment motion]," and did not rely on any additional evidence or argument in reply. [Filing No. 50 at 1-2.]

### B.    Discussion

The Court's Local Rules allow a summary judgment sur-reply only in limited circumstances—if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response. Local Rule 56-1(d); *see Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, 2010 WL 1258052, at *8 (S.D. Ind. Mar. 25, 2010) (explaining that the "purpose for having

a motion, response and reply is to give the movant the final opportunity to be heard and to rebut the non-movant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion") (cleaned up).

Here, Defendants initially raised their qualified immunity argument in their initial brief in support of the Motion for Summary Judgment and did not include any new evidence in their reply nor object to the admissibility of evidence that Mr. Boykins cited to in his response. [*See* Filing No. 40; Filing No. 45.] Rather, Defendants addressed the arguments that Mr. Boykins made in response and reiterated their arguments in support of their motion, including as to qualified immunity. Accordingly, there were no appropriate grounds for Mr. Boykins to file a surreply, and the Court, in its discretion, **DENIES** Mr. Boykins' Motion for Surreply, [Filing No. 47], and does not consider the arguments therein.[2] As a result, Defendants' Motion to Strike, [Filing No. 48], and Mr. Boykins' Motion Requesting Denial of Motion to Strike, [Filing No. 49], are **DENIED AS MOOT**.

## II.
### MOTION FOR SUMMARY JUDGMENT

**A.   Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record in the light most favorable to the non-moving party, including giving that party the benefit of conflicting evidence, and draws all reasonable inferences in that party's favor. *Ziccarelli v. Dart*, 35 F.4th 1079, 1083 (7th Cir. 2022); *Khungar v. Access Cmty. Health*

---

[2] As discussed below, even if the Court were to consider the arguments, they do not change the outcome of its decision.

3

*Network*, 985 F.3d 565, 572-73 (7th Cir. 2021); *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017) (cleaned up). "Taking the facts in the light most favorable to the non-moving party does not mean that the facts must come only from the nonmoving party. Sometimes the facts taken in the light most favorable to the non-moving party come from the party moving for summary judgment or from other sources." *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough." *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018) (cleaned up). Rather, at the summary judgment stage, "[t]he parties are required to put their evidentiary cards on the table." *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

When the evidence in the case involves a video of the relevant events, "[a] twist on the usual standard of review is at play." *Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016). "When the evidence includes a videotape of the relevant events, the Court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape." *Id.* (citing *Scott v. Harris,* 550 U.S. 372, 379-80 (2007)). In other words, the Court "can rely on clear and conclusive videos if 'they firmly settle[ ] a factual issue.'" *Manery v. Lee*, 124 F.4th 1073, 1077 n.5 (7th Cir. 2025) (quoting *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018)).

### B. Factual Background

The facts stated below are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

#### 1. *Events on April 8, 2021*

Mr. Boykins is a severe Type 1 diabetic. [Filing No. 37-3 at 10.] On April 8, 2021, Officer Gray was called to assist with Mr. Boykins, who was being treated for extremely low blood sugar. [Filing No. 37-1 at 1.] Medical staff at PCF had provided Mr. Boykins with glucose and advised correctional staff, including Officer Gray, to place Mr. Boykins in the infirmary shakedown booth as he recovered. [Filing No. 37-1 at 1.] Officer Gray and other officers escorted Mr. Boykins to the infirmary shakedown booth, and as they arrived, "Mr. Boykins threw himself onto the ground and stated that he was not going in the shakedown booth." [Filing No. 37-1 at 1-2.] Mr. Boykins exhibited disorderly behavior, and Officer Gray gave Mr. Boykins multiple orders to submit to restraints to ensure the safety of both staff and others who were present. [Filing No. 37-1 at 2.] Mr. Boykins refused to submit to restraints. [Filing No. 37-1 at 2.] Officer Gray managed to place

one restraint on Mr. Boykins' left wrist, after which he "became combative and continued to resist." [Filing No. 37-1 at 2.] Officer Gray again ordered Mr. Boykins to submit to restraints and provided "multiple warnings that he would be tased if he did not comply."[3] [Filing No. 37-1 at 2.] Mr. Boykins continued to resist, and Officer Gray deployed a single use of her taser to Mr. Boykins' left stomach area to gain compliance. [Filing No. 37-1 at 2.]

Following the deployment of taser, Mr. Boykins complied with staff orders. [Filing No. 37-1 at 2.] Officer Gray and the other officers secured Mr. Boykins in the infirmary shakedown booth "as ordered by medical staff." [Filing No. 37-1 at 2.] A nurse completed an assessment of Mr. Boykins following the use of the taser and confirmed that Mr. Boykins should remain in the infirmary shakedown booth as his blood sugar returned to normal. [Filing No. 37-1 at 2.]

    2.    *Events on April 25, 2021*

On April 25, 2021, Mr. Boykins was in the infirmary with a PCF medical staff member and a non-party officer. [Filing No. 38 at 1:34:30-1:37-30.][4] Mr. Boykins began acting erratically and was stumbling around the infirmary. [Filing No. 38 at 1:34:30-1:37-30.] He eventually slumped down against a door and began rolling on the floor. [Filing No. 38 at 1:36:30-1:37:05.] Another non-party officer arrived, and the two officers placed hand restraints on Mr. Boykins as he was on the floor. [Filing No. 38 at 1:37:05-1:38:03.] The officers then helped Mr. Boykins to his feet and

---

[3] Mr. Boykins alleges that he was not given any warning that a taser was going to be deployed. [Filing No. 43 at 2.] However, the evidence that Mr. Boykins cites in support contradicts his allegation. [Filing No. 43 at 2 (citing Filing No. 43-1 at 31 and Filing No. 43-1 at 33 (Reports of Use of Physical Force both indicating that "multiple orders to submit to mechanical restraints" were given)).] He does not cite any further admissible evidence for support, so the Court does not credit his assertion. [Filing No. 43 at 2.] *See* Fed. R. Civ. P. 56(c).

[4] The events on April 25, 2021 were captured by a PCF security camera, and video evidence of the incident was manually filed with the Court. [*See* Filing No. 38; Filing No. 42.] Mr. Boykins also received a copy of the video evidence. [Filing No. 38.]

assisted in keeping him upright while the medical staff member approached with a tube of glucose. [Filing No. 38 at 1:38:03-1:38:25.]  The medical staff member showed Mr. Boykins the glucose tube and the medical staff member and officers explained to him what it was.  [Filing No. 1:38:25-1:38:40.]  Mr. Boykins then became aggressive and pushed his body into the officers and dropped to the floor.  [Filing No. 1:38:40-1:39:05.]  The officers assisted Mr. Boykins back to a standing position, one on each side of Mr. Boykins holding him upright, and began to assist him towards a chair that was a few meters away.  [Filing No. 1:38:40-1:39:28.]  After taking a few steps, Mr. Boykins kicked the officer to his right and hooked his leg behind the officer, causing all three of them to trip and fall to the floor.  [Filing No. 1:39:28-1:39:30.]  While on the floor, Mr. Boykins continued to move as the officers attempted to keep him still.  [Filing No. 1:39-30-1:40:30.]

      While these events were occurring, Officer Tyler was called to the infirmary to assist with Mr. Boykins.  [Filing No. 37-2 at 1.]  When Officer Tyler arrived, the non-party officers still had Mr. Boykins on the ground and were trying to sit Mr. Boykins up so that he could be evaluated by medical staff.  [Filing No. 37-2 at 1; Filing No 38 at 1:40:02-1:40:37.]  Mr. Boykins continued to resist and kick his legs, and Officer Tyler deployed his taser to Mr. Boykins' right side for five seconds.[5]  [Filing No. 37-2 at 2; Filing No. 38 at 1:40:37-1:41:12.]  Mr. Boykins complied with staff orders following the use of the taser and was evaluated by the medical staff member, who determined that Mr. Boykins needed glucose and provided it to him.  [Filing No. 37-2 at 2; Filing No. 38 at 1:41:12-1:48:30.]  Mr. Boykins' blood sugar eventually returned to normal, and he was cleared by the medical staff member to return to his cell.  [Filing No. 37-2 at 2.]

---

[5] Mr. Boykins alleges that he was "subdued, fully restrained with leg shackles and handcuffs on" when he was tased.  [Filing No. 43 at 7-8.]  However, the Court does not credit this assertion because video evidence blatantly contradicts it.  *Williams*, 809 F.3d at 942.  The video evidence shows that Mr. Boykins' legs were not restrained by leg shackles and were instead kicking around in the moments before he was tased.  [Filing No. 38 at 1:40:37-1:41:02.]

3. *Mr. Boykins' Recollection of the Events*

Mr. Boykins testified that when his blood sugar gets low, he is unable to remember anything "up and to the point of when [he] get[s] sugar in [his] system and it starts coming back." [Filing No. 37-3 at 9.] He explained that he cannot recall the details of what happened during either incident aside from being tased. [Filing No. 37-3 at 7-9; Filing No. 37-3 at 11-13; Filing No. 37-3 at 21-22.]

4. *This Lawsuit*

Mr. Boykins filed this *pro se* lawsuit on April 3, 2023. [Filing No. 1.] The Court screened Mr. Boykins' Complaint pursuant to 28 U.S.C. § 1915A, and found that the following claims would proceed: (1) Eighth Amendment excessive force claims against both Defendants; and (2) Eighth Amendment deliberate indifference to medical care claims against both Defendants. [Filing No. 7.] Defendants have filed a Motion for Summary Judgment. [Filing No. 37.]

**C.    Discussion**

1. *Excessive Force Claims*

In support of their motion, Defendants argue that the record demonstrates that they did not use excessive force on either occasion because the taser was required during both incidents to gain compliance and ultimately allow staff to fully restrain Mr. Boykins and ensure facility safety. [Filing No. 40 at 7-8.] They highlight that on April 8, 2021, Mr. Boykins refused to obey orders to enter the infirmary shakedown booth after receiving glucose and became combative and that on April 25, 2021, he acted erratically and aggressively. [Filing No. 40 at 7-8.] Defendants argue further that they are entitled to qualified immunity because "it is not clearly established that it is unconstitutional for an officer to use a taser to get an inmate to comply when the inmate is being

8

uncooperative, refusing orders to comply, and showing aggressive behaviors." [Filing No. 40 at 12.]

In response, Mr. Boykins argues that during each incident, he was suffering from low blood sugar and was already restrained on the ground when he was tased. [Filing No. 43 at 5-7.] He asserts that there is a genuine question of fact regarding whether the use of the taser was necessary during each incident and whether it was used in good faith. [Filing No. 43 at 5-8.]

Defendants reiterate that the use of force was necessary on both occasions to restrain Mr. Boykins "given his disorderly behavior and the risk he was posing to facility safety." [Filing No. 45 at 1.] They assert that Mr. Boykins' reliance on the fact that the incidents occurred while he was experiencing a medical issue does not mean that the force was excessive. [Filing No. 45 at 2 (citation omitted).] Defendants argue that even if Mr. Boykins could show a violation of his constitutional rights, they "are still entitled to summary judgment because their actions did not violate clearly established law." [Filing No. 45 at 3.] They highlight that Mr. Boykins "failed to point to any analogous case that would show that [they] are not entitled to qualified immunity" and that "[c]ase law makes clear that use of force may be necessary and appropriate even when a plaintiff's combative behavior is involuntary and the result of a medical emergency." [Filing No. 45 at 3 (citations omitted).]

"Qualified immunity is a doctrine that protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019) (cleaned up). Once a defendant raises qualified immunity as a defense, the burden shifts to the plaintiff to defeat it by showing "two elements: first, that the facts show a violation of a constitutional right, and second, that the constitutional right was clearly established at the time of

9

the alleged violation." *Id.* (cleaned up). The Court has discretion which of the elements to address first. *Id.* "'If *either* inquiry is answered in the negative, the defendant official' is protected by qualified immunity." *Koh v. Ustich*, 933 F.3d 836, 844 (7th Cir. 2019) (quoting *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018) (emphasis in original)). "Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus [state actors] are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015)).

Here, the Court finds the second element dispositive. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. . . . Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix*, 577 U.S. at 11-12 (cleaned up). Whether the law is clearly established is a question of law. *Lewis v. Downey*, 581 F.3d 467, 478 (7th Cir. 2009) (citation omitted). Courts cannot define "clearly established law at a high level of generality" but rather must assess "whether the violative nature of *particular* conduct is clearly established." *Id.* (cleaned up). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments[.]" *Carroll v. Carman*, 574 U.S. 13, 17 (2014).

Even assuming that Officer Gray and Officer Tyler used excessive force when they tased Mr. Boykins on April 8 and April 25, 2021, respectively—a proposition that is not at all evident— the record establishes that both Defendants are entitled to qualified immunity. Mr. Boykins has not pointed to—and the Court's research has not revealed—any binding caselaw clearly establishing that an officer may not deploy a taser to gain compliance over an inmate who is being

10

uncooperative, showing aggression, and refusing to comply with orders when the inmate is partially restrained and his behavior is involuntary due to a medical issue. On the contrary, a court in this district recently granted summary judgment to prison officials on an excessive force claim involving a taser where the plaintiff inmate was experiencing a medical issue, was acting involuntarily and aggressively, and was partially restrained because deploying the taser was necessary to gain compliance and ensure the safety of the officers and the facility. *Alexander v. Edwards*, 2024 WL 4135091, at *3-6 (S.D. Ind. Sept. 10, 2024). Mr. Boykins has failed to meet his burden of showing that Defendants are not entitled to qualified immunity.[6]

Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment, [Filing No. 37], as to Mr. Boykins' excessive force claims against Defendants.

### 2. Deliberate Indifference Claims

Defendants argue that they were not deliberately indifferent to Mr. Boykins' medical needs. [Filing No. 40 at 9-10.] Specifically, as to the events on April 8, 2021, they assert that Officer Gray's role was limited to assisting medical staff to place Mr. Boykins in an infirmary shakedown booth after Mr. Boykins was given glucose and refused to follow orders to enter the infirmary shakedown booth. [Filing No. 40 at 9.] As to the incident on April 25, 2021, Defendants assert

---

[6] Even if the Court had granted Mr. Boykins' Motion for Surreply and considered his arguments therein, Defendants would still be entitled to qualified immunity. In his Motion for Surreply, Mr. Boykins cites to *Vasquez v. Gempeler*, 2008 WL 2953566 (W.D. Wis. July 29, 2008) to support his argument against qualified immunity. But *Vasquez* does not place the constitutional question at issue beyond debate and is significantly distinguishable from this case. *See id.* (holding that prison officials who deployed their taser three times on an inmate whose hands and feet were restrained and who did not pose any danger were not entitled to qualified immunity on an excessive force claim); *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (explaining that although the law "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate"). And the Court again acknowledges *Alexander*, where a court in this district granted summary judgment to prison officials on almost identical facts. *Alexander*, 2024 WL 4135091, at *3-6.

that Officer Tyler was assisting medical staff and other officers in restraining Mr. Boykins due to his behavior and for medical staff to safely evaluate him. [Filing No. 40 at 10.] Defendants also argue that they are entitled to qualified immunity because "it is not clearly established that it is unconstitutional for an officer to rely on medical staff's determination in placing an inmate in a shakedown booth" or "for an officer to use reasonable force to restrain a belligerent inmate so that the inmate can be safely evaluated by medical staff." [Filing No. 40 at 12.]

Mr. Boykins does not explicitly address his deliberate indifference claims in his response, but as best the Court can tell, Mr. Boykins argues that Defendants were deliberately indifferent to his medical needs when they used force while he was suffering from low blood sugar. [*See* Filing No. 43.]

Defendants reiterate their arguments in reply. [Filing No. 45 at 2-4.]

As with the excessive force claims, the second element of the qualified immunity analysis is dispositive here. While it is clearly established that deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment, *see Jackson v. Esser*, 105 F.4th 948, 961 (7th Cir. 2024) (citing *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021)), the relevant question is whether Officer Gray's and Officer Tyler's specific conduct violated that constitutional right under clearly established law. Mr. Boykins has cited no case—and the Court is not aware of one—holding that it is unconstitutional for prison officials to use force in accordance with medical staff's direction to gain control over an inmate during a medical crisis. Nor is there clearly established law prohibiting officials from restraining a combative, erratic inmate suffering from low blood sugar who refuses to accept treatment.

This case presents precisely the kind of complex scenario in which qualified immunity applies—where officials, acting in good faith, make rapid decisions involving both inmate health

12

and institutional security. In *Gruenberg v. Gempeler*, 697 F.3d 573, 579 (7th Cir. 2012), the Seventh Circuit granted qualified immunity to prison officials who restrained an inmate without clothing for five days after he swallowed keys that he removed from an officer, finding that the situation presented a "classic" example of the doctrine shielding officials who respond to an unusual and dangerous set of circumstances. The *Gruenberg* Court emphasized the need to protect officials who act reasonably in the face of uncertain risks to both health and safety, and that is what Officers Gray and Tyler did here. *Id.* The record shows that although Mr. Boykins was suffering from extremely low blood sugar, he was combative during both incidents. On April 8, 2021, Mr. Boykins was given glucose and then refused to enter the infirmary shakedown booth at the direction of medical staff, thereby resulting in Officer Gray deploying force and ensuring that Mr. Boykins entered the infirmary shakedown booth for safe treatment as his blood sugar recovered. And on April 25, 2021, Mr. Boykins did not accept the tube of glucose and was behaving in a way that made it unsafe for medical staff to evaluate or assist him, leading to Officer Tyler's use of force to gain compliance and allow for safe treatment.

As the Seventh Circuit has stressed, qualified immunity turns on "all the circumstances as they reasonably appeared to the official at the time the challenged conduct took place." *Id.* (quoting *Crowder v. Lash*, 687 F.2d 996, 1006-07 (7th Cir. 1982)). In these circumstances—where Mr. Boykins was physically unstable, uncooperative, and obstructing medical care—Officers Gray and Taylor made reasonable judgment calls. Qualified immunity exists to shield officials in exactly these kinds of difficult and dynamic situations.

Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment, [Filing No. 37], as to Mr. Boykins' deliberate indifference claims against Defendants.

## III.
### Conclusion

For the foregoing reasons, the Court:

- **DENIES** Mr. Boykins' Motion for Surreply, [47];

- **DENIES AS MOOT** Defendants' Motion to Strike, [48], and Mr. Boykins' Motion Requesting Denial of Motion to Strike, [49]; and

- **GRANTS** Defendants' Motion for Summary Judgment, [37].

Final judgment shall issue accordingly.

Date: 6/5/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF to all counsel of record**

**Distribution via U.S. Mail to:**

DE'ADRIAN BOYKINS
201883
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064